# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| KEITH McDOWELL, <br><br> Plaintiff, <br><br> vs. <br><br> ANAMOSA STATE PENITENTIARY, <br> CARRIE KLATT, <br> LAURA BARNER, <br> HEROLD DEVILBISS, <br> FNU GUDENKAUF, <br> DARREN BURKEN, <br> CARLOS CASTILLO, and <br> MIKE KUHN, <br><br> Defendants. | No. 22-CV-1-CJW-KEM <br><br><br> **ORDER** |

_____

This matter is before the Court for review of plaintiff Keith McDowell's Complaint filed under Title 42, United States Code, Section 1983 concerning conditions and treatment while he was incarcerated at the Anamosa State Penitentiary (Doc. 1) and a Motion for Leave to Proceed In Forma Pauperis (Doc. 6). For the reasons that follow, the Court **grants** plaintiff's motion for leave to proceed in forma pauperis and, having conducted an initial review of plaintiff's complaint, the Court finds that it fails to state a claim and the complaint is **dismissed.**

## I. MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff is required to submit a filing fee upon instituting a civil action. 28 U.S.C. § 1914(a). A person seeking to bring a civil action without payment of the required fee may apply for the Court's leave to proceed in forma pauperis. *Id.* § 1915(a). In support of the application to proceed in forma pauperis, a person must also submit an affidavit

that includes a statement of all assets the person has and the person's inability to pay the filing fee.[1]  *Id.* § 1915(a)(1).  In addition, a prisoner must submit a certified copy of his prisoner trust fund account statement for the previous six-month period or institutional equivalent.  *Id.* § 1915(a)(2).

Plaintiff is a prisoner incarcerated at the Newton Correctional Facility.  In his motion to proceed in forma pauperis, plaintiff submitted the required affidavit and a completed copy of the standard certificate of offender account and assets, signed by the appropriate prison official, which sets out that plaintiff has $4.97 in his prison account, that over the last six months plaintiff has had an average account balance of $42.25, and the six month deposit average is $248.83.  (*See* Doc. 6).  Thus, plaintiff's application to proceed in forma pauperis is **granted**.

Nevertheless, even though the Court deems it appropriate to grant the plaintiff in forma pauperis status, plaintiff is still required to pay the full $402.00 filing fee by making payments on an installment basis because he is incarcerated.  28 U.S.C. § 1915(b)(1); *see also In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997) ("[T]he [Prisoner Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal.").  The filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks money damages against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Plaintiff must pay an initial partial filing fee in the amount of twenty percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint.  28 U.S.C. § 1915(b)(1).  Based on the

---

[1] This includes the $350 filing fee set out by 28 U.S.C. § 1914(a) and the additional $52.00 administrative fee required when filing all civil actions.  *See* 28 U.S.C. § 1914, *Judicial Conference Schedule of Fees*, No. 14 ("Administrative fee for filing a civil action, suit, or proceeding in a district court, $52. . .").

documents that plaintiff submitted, the Court finds that initial partial filing fee is $49.77. (*See* Doc. 6). Plaintiff shall submit $49.77 by no later than thirty days from the date of this order.

In addition to the initial partial filing fee, plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after plaintiff pays in full the initial partial filing fee, the remaining installments shall be collected by the institution having custody of the plaintiff. The clerk's office shall send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where plaintiff is an inmate.

## II. INITIAL REVIEW

### A. *Applicable Standards*

Under Title 28, United States Code, Section 1915A, this case is subject to immediate review because it is a "civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." According to Section 1915A, such a complaint must be dismissed if it is frivolous, malicious, or fails to state a claim for which relief may be granted, or if it seeks monetary relief from a defendant that is immune from suit. *See e.g.*, *Smith v. Miller*, Case No. 21-CV-18-CJW-MAR, 2021 WL 917482 (N.D. Iowa Mar. 10, 2021).

In reviewing a prisoner or in forma pauperis complaint, unless the facts alleged are clearly baseless, a court must weigh them in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). In determining whether a complaint fails to state a claim on initial review, courts generally rely on the standards articulated under Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128–29 (8th Cir. 1996) (applying Rule 12(b)(6) standard to a dismissal under 28 U.S.C. § 1915(e)(2)). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *id.* at 555, or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

> Title 42, United States Code, Section 1983 provides, in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Nevertheless, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).

"One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Id.* at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.  Analysis

Plaintiff's complaint contains a series of allegations about the conditions of his confinement while an inmate at the Anamosa State Penitentiary ("ASP") for which he seeks damages in the amount of $55 million. (Doc. 1). Each of his claims lack merit and most, if not all, are patently frivolous. The Court will address each in turn. But first it notes that plaintiff's complaint fails to state a claim against the ASP. Here, plaintiff is seeking monetary damages, not injunctive relief. "By its terms, § 1983 applies to 'persons,' and it is well settled that state agencies . . . are not 'persons' for purposes of § 1983." *Mills v. Iowa Bd. of Regents*, 770 F. Supp.2d 986, 992 (S.D. Iowa 2011) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–71 (1989)). Thus, irrespective of the merits of each claim, the Court would dismiss the ASP as a defendant.

### 1.  *Inadequate Housing*

Plaintiff's first claim is that when he first arrived at the ASP, he was housed in "an area known as D-3" which plaintiff alleges "is a condemned area." (Doc. 1, at 4-

5

5). Plaintiff alleges he was then moved to a building where the cells "were so small they were meant to house one person but a majority of us had cellmates." (*Id.*, at 5). Plaintiff does not identify the person or persons he claims is responsible for his placement in these locations and does not describe any injury he suffered as a result of being housed in these locations. Plaintiff does not allege when this occurred.

Plaintiff's allegations fail to state a claim for several reasons. First, he does not identify any person who he claims is responsible for housing him in inappropriate cells. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008); *see also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that Section "1983 provides a cause of action against persons only").

Second, plaintiff has failed to allege facts about his confinement that rise to the level of a constitutional violation. Conditions of confinement may amount to unconstitutional punishment if they are intentionally punitive, not reasonably related to a legitimate governmental purpose, or are excessive in relation to that purpose. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907-908 (8th Cir. 2020). In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the United States Supreme Court reviewed the limitations the Eighth Amendment placed on the conditions in which a state may confine a prisoner and held constitutional the double celling of inmates in a 63 square foot space originally designed for one inmate. The Supreme Court recognized that "[c]onfinement . . . is a form of punishment subject to scrutiny under the Eighth Amendment standards," and that the reviewing court must look to whether the circumstances of the inmate are such that they "either inflict[ ] unnecessary or wanton pain or [are] grossly disproportionate to the severity of crimes warranting imprisonment." *Id.* at 345, 348. Finally, the Supreme Court cautioned the lower courts when making Eighth Amendment judgments that the courts' inquiries "spring from constitutional requirements and that judicial answers to

6

them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.*, at 351 (internal citation omitted).

Here, plaintiff has not explained how long he was placed in either housing location, described the condition of the "condemned area," described the size of his "small" cell, or explained whether he had access to other areas allowing him recreation. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (when determining whether a constitutional violation has occurred, a court must consider the size and availability of recreation within the cell, the ability to exercise out of the cell in a day room or other indoor area, the duration of confinement, and the extent of any physical injury). It is not enough for plaintiff to allege in conclusory fashion that he was placed in cells that were too small or otherwise inappropriate. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

Last, and importantly, plaintiff has not claimed any physical injury from this confinement. Plaintiff may not sue under Section 1983 for mental or emotional injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act"); *Allen v. Wright*, 468 U.S. 737, 751 (1984) (to meet the standing requirement of Article III, "a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct.").

Thus, the Court finds plaintiff's complaint fails to state a claim on this ground.

### 2. *Insufficient Quantity of Ravioli*

Plaintiff alleges that on July 4, 2020, he received a supper tray that contained "only 3 or 4 pieces of ravioli" and observed that other inmates had more; he blames the

7

Case 1:22-cv-00001-CJW-KEM   Document 7   Filed 04/22/22   Page 7 of 15

kitchen supervisor Carrie Klatt for this incident. (Doc. 1, at 5). He alleges this violated the Eighth Amendment bar against cruel and unusual punishment.

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. CONST. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes*, 452 U.S. at 347. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted).

A convicted prisoner, such as plaintiff, alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Prisoners have a right to nutritionally adequate food. *Wishon*, 978 F.2d at 449. *See also Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet"). Although control of the diet is within the discretion of prison officials, the diet must be adequate. *Divers v. Dep't of*

8

*Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016). *See also Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (stating that plaintiff's allegations regarding constant hunger, small food portions, and weight loss were sufficient for purposes of preservice review); and *Davis v. State of Missouri*, 389 Fed. App'x 579, 579 (8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food, and that he was always sick and lacking energy, were sufficient to survive preservice dismissal).

Here, plaintiff alleges a single occasion when he received "only 3 or 4 pieces of ravioli," when other inmates received more. (Doc. 1, at 5). He does not allege that he went hungry, the food was nutritionally inadequate, that he lost weight, became sick, or otherwise suffered any adverse physical consequences as a result of his ravioli deprivation. Plaintiff's claim here is patently frivolous.

Thus, the Court finds plaintiff's complaint fails to state a claim on this ground.

### *3. Wrongfully Convicted of Possessing Marijuana*

Plaintiff alleges that he was wrongfully accused and found guilty of possessing marijuana by defendants Devilbliss and Gudenkauf. (Doc. 1, at 6). Plaintiff alleges he appealed the disciplinary action to the warden, but the warden did not respond. (*Id.*). Plaintiff also complains that defendant Burken failed to "get[ ] me an investigator for the accusation of my smoking marijuana" which plaintiff alleges he needed "to prove irrefutably that [he] had not been doing drugs." (*Id.*, at 7). Plaintiff does not state when these alleged violations occurred.

Plaintiff's claim here is barred by the *Heck* Doctrine. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. The *Heck* doctrine applies to inmate disciplinary proceedings. *Edwards v. Balisok*, 520 U.S. 641 (1997) (holding that damages claim challenging procedures used in prison disciplinary proceedings is not cognizable under Section 1983 until disciplinary conviction has been set aside); *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995) (per curiam) (holding that *Heck*-barred Section 1983 action should be dismissed without prejudice). Plaintiff here has failed to show any attempt to appeal, expunge, or otherwise invalidate his allegedly wrongful conviction.

Thus, the Court finds plaintiff's complaint fails to state a claim on this ground.

### 4. *Unfair Co-Pay Charges*

Plaintiff alleges that defendant Laura Barner "has stolen [$]3.00 dollars from me disguised as co-pays on at least 3 occasions." (Doc. 1, at 7). As a result, plaintiff claims he has not had sufficient funds to purchase commissary items, causing him "to smell horrible for the week." (*Id.*). Plaintiff does not allege when this occurred.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prisons provide medical care to inmates. Nevertheless, prisons are not required to provide this medical care irrespective of cost. *See Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997) (deliberate indifference standard does not guarantee prisoners the right to be free from cost considerations). Inmates may be constitutionally required to pay for their own medical expenses if they can afford to do so. *See Blaise v. McKinney*, No. 98-3916, 1999 WL 486854, at *1 (8th Cir. 1999) (stating that Eighth Amendment prohibition against cruel and unusual punishment does not require that

medical care be provided to inmates free of cost) and *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (holding that "requiring [county] inmates to pay for their own medications if they can afford to do so . . . is not a federal constitutional violation.").

Here, plaintiff does not allege that the medical co-pay resulted in medical care being withheld or that he was unable to pay the co-pay. Rather, plaintiff makes conclusory allegations that the nurse wrongfully assessed the co-pay charges against him. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (cleaned up); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that a court must accept factual allegations in the complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation."). Plaintiff's allegations against defendant Barner are mere conclusory allegations unsupported by facts establishing a violation of his rights.

Thus, the Court finds plaintiff's complaint fails to state a claim on this ground.

### 5. *Housed With Inmate Who Threatened Plaintiff*

Plaintiff alleges that on September 18, 2020, defendant Castillo placed plaintiff in a cell with another inmate who made a veiled threat when plaintiff revealed he was a sex offender. (Doc. 1, at 7). Plaintiff alleges that when he made defendant Castillo aware of the threat, defendant Castillo removed plaintiff from the cell. (*Id.*). Plaintiff does not allege that he was injured by the other inmate.

Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prison official violates this right when "he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Newman v. Holmes*, 122 F.3d 650, 652 (8th Cir. 1997). A failure-to-protect claim has an objective

11

component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. *See Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).

Here, plaintiff has failed to allege facts that satisfy either component. He does not allege that defendant Castillo knew that the other inmate would pose a risk to plaintiff; indeed, had plaintiff not revealed his sex offender status the other inmate may not have threatened him. Further, plaintiff has failed to allege facts that would show defendant Castillo was deliberately indifferent to any risk. To the contrary, plaintiff states that defendant Castillo removed plaintiff from the cell as soon as plaintiff informed him of the threat. Last, plaintiff has failed to alleged that he suffered any physical injury as a result of the brief time he was celled with an inmate who threatened him.

Thus, the Court finds plaintiff's complaint fails to state a claim on this ground.

### *6.  Taunts by Inmates*

Plaintiff alleges that on September 21, 2020, "Defendant Mike Kuhn wrote me a major report because I had finally tried to commit suicide after months of [psychological] torture due to the lack of care by correctional officers and ongoing taunts by inmates." (Doc. 1, at 8). Plaintiff alleges that he reported the instances of taunts to officers, but the officers "always said they heard nothing and even if they did they denied they knew who was saying stuff." (*Id.*). Plaintiff does not allege that he suffered a physical injury as a result of the "major report" or the alleged taunts.

Plaintiff's claim here fails to state a claim for several reasons. First, although plaintiff mentions defendant Kuhn as writing plaintiff up on a "major report" for attempting suicide, he does not allege facts showing that the report was somehow a violation of plaintiff's constitutional rights. Second, plaintiff does not identify the names of the correctional officers he alleges failed to protect plaintiff from or follow up on inmate taunts. Third, plaintiff has failed to allege facts showing the unnamed correctional

12

officers actually heard any taunts; to the contrary he alleges the officers stated they did not hear the taunts. A prison official can only be found to be deliberately indifferent if he "knows of and disregards" a substantial risk to an inmate's safety. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (en banc). In short, plaintiff has failed to allege facts that would show the correctional officers were deliberately indifferent to plaintiff's safety at the hands of other inmates. *See Romer v. Morgenthau*, 119 F. Supp.2d 346, 362-63 (S.D.N.Y. 2000) (finding inmate failed to state a claim that correctional officers were deliberately indifferent to alleged harassment the inmate experienced by other inmates that allegedly led to the inmate's high blood pressure). Last, plaintiff has not claimed to have suffered any physical injury as a result of the taunts. Although he alleged he tried to commit suicide because of the taunts, Section 1983 does not recognize a claim for mental and emotional injury. 42 U.S.C. § 1997e(e). Nor does plaintiff even allege a physical injury as a result of his own suicide attempt.

Thus, the Court finds plaintiff's complaint fails to state a claim on this ground.

### III. CONCLUSION

For the reasons stated:

1. Plaintiff's motion to proceed in forma pauperis (Doc. 6) is **granted**. Plaintiff must submit $49.77 by no later than thirty days from the date of this order. Because plaintiff does not have money in his prison account to pay the remainder of the filing fee, the institution having custody of him is directed to monitor his account, and, at such time that it is possible, provide an initial partial filing fee as calculated under Title 28, United States Code, Section 1915(b);

2. The Clerk of Court is directed to send a copy of this order and the notice of collection of the filing fee attached below to the appropriate official at the place where plaintiff is an inmate;

13

3. Plaintiff's complaint is **dismissed for failure to state a claim**.

**IT IS SO ORDERED** this 22nd day of April, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

TO: **WARDEN/ADMINISTRATOR**

**Department of Corrections, Newton Correctional Facility.**

### NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Keith McDowell, an inmate at your facility, filed a lawsuit in the United States District Court for the Northern District of Iowa: *McDowell v. Anamosa State Penitentiary, et al.*, Case No. 22-CV-1-CJW-KEM. The Court granted the inmate in forma pauperis status under Title 28, United States Code, Section 1915(b), which requires partial payments of the $402.00 filing fee. Based on the inmate's statements, his initial partial file fee is $49.77. The inmate is now required to pay that fee to the clerk of court. *See* 28 U.S.C. § 1915(b)(1). Additionally,

> [a]fter payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account. The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, you must monitor the account and send payments to the clerk of court according to the system provided in Title 28, United States Code, Section 1915(b)(2), that is, after the initial partial filing fee is paid, you should begin making monthly payments of 20 percent of the preceding month's income credited to the plaintiff's account, until the entire $402 filing fee is paid. Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed. If the inmate has been relocated to a different institution, please forward this Order and Notice to the institution having custody of him. Any institution having custody of the inmate is responsible to collect and remit the filing fee as set forth above.

s/Sarah Melvin, Deputy Clerk<br>
Paul DeYoung<br>
U.S. District Court Clerk<br>
Northern District of Iowa